IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BASF CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>PLATINUM AUTOMOTIVE CENTER LLC d/b/a PLATINUM AUTOMOTIVE CENTER,<br><br>Defendant. | C/A No.: 2:24-cv-03974-DCN<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff BASF Corporation ("BASF"), by and through undersigned counsel, as and for its Complaint against the above-captioned defendant Platinum Automotive Center LLC d/b/a Platinum Automotive Center ("Defendant") alleges as follows:

**THE PARTIES**

1. BASF is a citizen of the States of Delaware and New Jersey. BASF is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New Jersey.

2. Defendant is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business located at 7229 Cross County Road, North Charleston, South Carolina 29418. Based on BASF's business dealings with Defendant and Defendant's filings with the State of South Carolina, Defendant's sole member is Iqbal Bhatti ("Bhatti"), a resident of South Carolina.

3. Defendant's registered agent is Bhatti, with a service address of 7229 Cross County Road, North Charleston, South Carolina 29418 on file with the State of South Carolina.

4. BASF is in the business of selling aftermarket paints, refinishes, coating, primers, thinners, and reducers as well as other related products and materials for the reconditioning, refinishing and repainting of automobiles, trucks, and other vehicles (collectively, "Refinish Products"). BASF resells the Refinish Products to distributors that in turn sell the Refinish Products to automotive body shops that are in the business of reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles.

5. Defendant is an autobody shop engaged in the business of reconditioning, refinishing and repainting automobiles, trucks, and other vehicles.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and complete diversity exists between the parties, as BASF is a citizen of the States of Delaware and New Jersey, and Defendant is a citizen of the State of South Carolina. Defendant is subject to the jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this claim occurred in South Carolina.

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District and Defendant is subject to the personal jurisdiction in this District.

8. Michigan substantive law governs BASF's claims per Paragraph 8 of the Requirements Agreement.

## GENERAL ALLEGATIONS

*The Terms of the Requirements Agreement*

9. On or about October 24, 2018, BASF and Defendant entered into a Requirements Agreement, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

10. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to fulfill one hundred percent of its requirements for Refinish Products up to a minimum purchase requirement of $534,000.00 of Refinish Products in the aggregate with BASF Glasurit and RM Refinish Products, net of all distributor discounts, rebates, returns and credits ("Minimum Purchases").

11. Pursuant to Paragraph 3 of the Requirements Agreement, BASF paid Defendant $85,000.00 ("Contract Fulfillment Consideration") in consideration of Defendant satisfying its obligations under the Requirements Agreement.

12. Pursuant to Paragraph 4 of the Requirements Agreement, BASF also transferred certain equipment ("Equipment") to Defendant for use in conjunction with BASF Refinish Products.

13. Pursuant to Paragraph 5 of the Requirements Agreement, if the Requirements Agreement were terminated for any reason prior to Defendant fulfilling its Minimum Purchases requirement, Defendant was required to refund the Contract Fulfillment Consideration and the value of the Equipment ("Equipment Value") to BASF pursuant to the following schedule:

| Purchases | Contract Fulfillment Consideration and Equipment Value Refund |
|---|---|
| Less than 1/5 of Minimum Purchases | 110% |
| Less than 2/5 and greater than 1/5 of Minimum Purchases | 95% |

3

| | |
|---|---|
| Less than 3/5 and greater than 2/5 of Minimum Purchases | 75% |
| Less than 4/5 and greater than 3/5 of Minimum Purchases | 55% |
| Less than 5/5 and greater than 4/5 of Minimum Purchases | 35% |
| After 5/5 of Minimum Purchases | 0% |

*__Defendant's Breach of the Requirements Agreement__*

14.  In or about March 2023, Defendant, without any legal justification, breached and ultimately terminated the Requirements Agreement by, among other things, commencing purchases of Refinish Products manufactured by BASF's competitor and ceasing to exclusively purchase BASF Refinish Products from BASF prior to fulfilling its $534,000.00 Minimum Purchases requirement and failing to refund the unearned Contract Fulfillment Consideration or Equipment Value to BASF.

15.  At the time of Defendant's breach and termination of the Requirements Agreement, Defendant had purchased only approximately $180,496.99 in BASF Refinish Products, which is less than two-fifths and greater than one-fifth of the Minimum Purchases requirement, leaving a purchase balance due and owing of $353,503.01.

16.  Defendant's breach and termination of the Requirements Agreement prior to fulfilling its Minimum Purchases requirement triggered an obligation to pay BASF 95% of the $85,000.00 Contract Fulfillment Consideration, which is $80,750.00, and 95% of the Equipment Value of $35,680.00, which is $33,896.00.

17.  BASF has fulfilled its obligations and remains ready, willing, and able to perform all obligations, conditions, and covenants required under the Requirements Agreement.

18.  By letter dated April 4, 2023, a true and accurate copy of which is attached hereto as Exhibit B, BASF gave Defendant notice that it was in default of its contractual

4

obligations and demanded a refund of the Contract Fulfillment Consideration and the Equipment Value. In addition, BASF notified Defendant that it would seek additional damages that it is entitled to if the matter progressed to litigation.

19. Despite the foregoing, Defendant has failed to satisfy its obligations under the terms of the Requirements Agreement.

## COUNT I
### Breach of Contract

20. BASF incorporates by reference the allegations contained in the above paragraphs.

21. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to fulfill one hundred percent of its requirements for Refinish Products up to a minimum purchase requirement of $534,000.00 of Refinish Products in the aggregate with BASF Glasurit and RM Refinish Products, net of all distributor discounts, rebates, returns and credits.

22. Despite Defendant's obligations under the Requirements Agreement and in breach thereof, Defendant failed to meet the Minimum Purchases requirements under the Requirements Agreement and failed to pay BASF the amounts due and owing thereunder.

23. A purchase balance of at least $353,503.01 remains outstanding under the terms of the Requirements Agreement.

24. Because of Defendant's breach without legal excuse, and pursuant to Paragraph 5 of the Requirements Agreement, Defendant is obligated to pay BASF 95% of the $85,000.00 Contract Fulfillment Consideration, which is $80,750.00, and 95% of the Equipment Value, which is $33,896.00.

25. As of the date of the filing of this Complaint, as a direct and proximate result of Defendant's breach, Defendant has damaged BASF under the Requirements Agreement as follows:

    a. $80,750.00 for 95% of the Contract Fulfillment Consideration;

    b. $33,896.00 for 95% of the Equipment Value; and

    c. $353,503.01 for the remaining balance of the Minimum Purchases requirement.

26. BASF has performed and fulfilled all obligations and conditions required of it under the terms of the Requirements Agreement. Nevertheless, Defendant's breaches of its obligations under the terms of the Requirements Agreement have resulted in damage to BASF.

27. As a direct and proximate result of Defendant's breaches of its obligations under the Requirements Agreement, BASF has suffered damages in an amount to be determined at trial but not less than $468,149.01.

**WHEREFORE**, BASF demands judgment against Defendant, awarding an amount to be determined at trial but not less than $468,149.01, together with interest thereon, awarding costs, counsel fees, and litigation expenses, and such other and further relief as the Court may deem just and proper.

## COUNT II
### Unjust Enrichment

28. BASF incorporates by reference the allegations contained in the above paragraphs.

29. Through BASF's business relationship with Defendant, Defendant received the benefit of the $85,000.00 Contract Fulfillment Consideration and the Equipment valued at $35,680.00 provided by BASF in anticipation of the parties' continued business relationship.

30. Defendant prematurely terminated the parties' business relationship, but Defendant has failed to return the $85,000.00 Contract Fulfillment Consideration or the Equipment to BASF.

31. BASF expected remuneration in the sum of $85,000.00 for the Contract Fulfillment Consideration and $35,680.00 for the Equipment Value. Defendant's failure to return the Contract Fulfillment Consideration and Equipment to BASF has unjustly enriched Defendant.

32. Permitting Defendant to retain the benefits of the $85,000.00 Contract Fulfillment Consideration and the Equipment valued at $35,680.00 when Defendant prematurely terminated its business relationship with BASF would be unequitable and unjust to BASF.

33. By reason of the foregoing, Defendant has been unjustly enriched by $120,680.00 for which BASF is entitled to be compensated in full by Defendant together with interest thereon.

**WHEREFORE**, BASF demands judgment against Defendant awarding an amount to be determined at trial but not less than $120,680.00, together with interest thereon, awarding costs, counsel fees, and litigation expenses, and such other and further relief as the Court may deem just and proper.

## COUNT III
### Declaratory Relief

34. BASF incorporates by reference the allegations contained in the above paragraphs.

35. BASF requests a judicial declaration of BASF's and Defendant's respective rights under the Requirements Agreement.

36. An actual dispute and justiciable controversy presently exists between BASF and Defendant concerning their rights and obligations under the Requirements Agreement.

Defendant contends that it has not breached the Requirements Agreement. BASF disagrees and contends that the Requirements Agreement is in full force and effect, and that Defendant is in breach of the Requirements Agreement.

37.     A judicial declaration is necessary to establish BASF's and Defendant's rights and duties under the Requirements Agreement.

## DEMAND FOR JURY TRIAL

38.     BASF demands a trial by jury on all counts and as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, BASF prays that this Court enter Judgment in its favor and against Defendant as follows:

a.     Awarding BASF monetary damages in an amount to be determined at trial, but not less than $468,149.01, together with prejudgment interest;

b.     Awarding BASF declaratory judgment in that the Requirements Agreement is in full force and effect;

c.     Awarding BASF all costs and fees of this action as permitted by law; and

d.     Awarding BASF such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/Lisa B. Bisso
Lisa B. Bisso (Fed. Bar No. 13606)
BUTLER SNOW, LLP
25 Calhoun St., Ste. 250
Charleston, SC  29401
Telephone:  843/277-3700
Facsimile:  843/277-3701
E-Mail:  lisa.bisso@butlersnow.com

***Attorneys for Plaintiff***

July 16, 2024

# EXHIBIT A

## REQUIREMENTS AGREEMENT

Agreement made as of ___October 24, 2018___ ("Effective Date"), with each twelve (12) months thereafter being a Contract Year by and between BASF Corporation, 26701 Telegraph Road, Southfield, MI 48033 ("BASF"), and Platinum Automotive Center, located at 7229 Cross County Road, North Charleston, SC 29576 ("BODY SHOP").

WHEREAS, BODY SHOP engages in the business of refinishing and repainting the bodies of automobiles, trucks, and other vehicles, ("Business") either directly or through persons or legal entities over which BODY SHOP now has or during the term of this Agreement has control ("Controlled Businesses"), which requires the use of after-market paints, refinishes, coatings, primers, thinners, and reducers ("Refinish Products"); and

WHEREAS, BASF is a manufacturer of Refinish Products;

NOW THEREFORE, it is agreed by and among the parties as follows:

1. **Term:** The Term of this Agreement shall commence with the first full calendar month subsequent to the Effective Date and continue until BODY SHOP and or until Body Shop and or until its Controlled Businesses have reached the Minimum Purchase Requirement of $534,000 in the aggregate of BASF Glasurit and RM products, net of all distributor discounts, rebates, returns and credits ("Minimum Purchase Requirements"), subsequent to the Effective Date. However, BASF shall have the right to terminate this Agreement at any time if BODY SHOP or any Controlled Business makes an assignment for the benefit of creditors, declares or is declared bankrupt, or either a controlling interest in the BODY SHOP or substantially all of the assets of the BODY SHOP are sold to a third party who is already under an obligation to use BASF Products pursuant to a contract with BASF Corporation or any of its subsidiaries.

2. **Purchase of Requirements of Products:** During the Term of this Agreement, BODY SHOP shall, and shall cause each of its Controlled Businesses to purchase from an authorized BASF distributor one hundred percent (100%) of their requirements for Refinish Products in connection with the Business, specifying only BASF brand products for Refinish Products.

Should BODY SHOP or Controlled Businesses' aggregate purchases of Refinish Products as validated through purchases from authorized BASF distributors pursuant to this Agreement be less than the values set forth herein, BODY SHOP shall refund a portion of the total amount of the Contract Fulfillment Consideration, as defined in Section 3 below, in accordance with the following sentence. If the aggregate

purchases of BASF Refinish Products are less than Five Hundred five Thousand ($505,,000) at month Sixty (60) subsequent to the Effective Date, BODY SHOP shall repay BASF Fifteent point nine percent (15.9%) of the shortfall.

**Examples of True -Ups:**

Shortfall @ 5 year True-Up:

| | | |
|---|---|---|
| Required Purchases | $505,000 x 15.9% = | $80,295 |
| Actual Purchases | $495,000 x 15.9% = | $78,705 |
| Repayment Due to BASF | | $1,590 |

3. **Contract Fulfillment Consideration:** Within forty-five (45) days of the Effective Date of this Agreement, BASF shall pay to BODY SHOP $85,000 in consideration of BODY SHOP fulfilling all of its obligations under this Agreement for the entire Term.

4. **Equipment:** In consideration of BODY SHOP fulfilling all of its obligations under this Agreement for the entire Term, BASF will transfer the equipment described on the attached Bill of Sale, incorporated herein by reference, to each of BODY SHOP's facilities or Controlled Businesses where the Business is conducted ("Equipment"). The Equipment shall only be used in conjunction with BASF Refinish Products. The Equipment has an estimated aggregate value of $34,270. There will be no charge for the Equipment if BODY SHOP fulfills all of its obligations under this Agreement. In connection with such obligation, BODY SHOP hereby grants BASF a continuing purchase money security interest in the Equipment sold to BODY SHOP by or on behalf of BASF, wherever located, now owned or hereinafter acquired and all proceeds therefrom, to secure BODY SHOP's obligation to BASF. The parties intend by this grant of purchase money security interest that each item of equipment shall secure both its own cost and any other indebtedness as permitted under Article 9 of the Uniform Commercial Code as now enacted in this jurisdiction, or in force at any relevant time. BASF will prepare and forward to its filing agency, the required Form UCC-1 evidencing BODY SHOP's grant of a security interest in the Equipment to BASF.

All Equipment shall be installed by or at the direction of BODY SHOP, which shall be responsible for compliance with all applicable laws and regulations concerning the installation and operation of the Equipment. BODY SHOP hereby acknowledges receipt of the document entitled "Important Safety Notice." Computer equipment such as: (a) CPUs, (b) terminals, (c) keyboards, (d) printers, etc., are NOT explosion-proof and should NOT be installed or used within a mixing area where paint and paint products are dispensed or used. BODY SHOP agrees to: (a) install or have the Equipment installed in a safe area

of its facility, and (b) BODY SHOP will indemnify and defend BASF in the event of any harm resulting from the installation, use, or maintenance of the Equipment. BODY SHOP shall be solely responsible for the costs of repair of the Equipment, including the costs of any replacement parts.

5. Remedy: Should this Agreement terminate for any reason prior to the expiration of the Term set forth above or should BODY SHOP be sold during the Term, in addition to whatever rights and obligations the parties may have to each other, BODY SHOP shall promptly, but in no event more than sixty (60) days, refund the Contract Fulfillment Consideration and the value of the Equipment in accordance with the following schedule:

| Purchases | | Contract Fulfillment Consideration and Equipment Value Refund |
|---|---|---|
| a. | less than 1/5th of Minimum Purchases | 110% |
| b. | less than 2/5th and greater than 1/5th of Minimum Purchases | 95% |
| c. | less than 3/5th and greater than 2/5th of Minimum Purchases | 75% |
| d. | less than 4/5th and greater than 3/5th of Minimum Purchases | 55% |
| e. | less than 5/5th and greater than 4/5th of Minimum Purchases | 35% |
| f. | After 5/5th of Minimum Purchases | 0% |

6. Severability: In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or part thereof shall be considered separate from the remaining provisions of this Agreement, which shall remain in full force and effect. Such invalid or unenforceable provision shall be deemed revised to effect, to the fullest extent permitted by law, the intent of the parties as set forth therein.

7. Confidential Information: This Agreement, and all of its terms, as well as any other information designated confidential and disclosed by either party to the other will be kept in confidence and restricted to those persons in the recipient's business who need to know same, except as to any such information which the recipient shows has become public information or which may be required to be disclosed by law.

8. Governing Law: This Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law. Each party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement.

9. <u>Assignment</u>: This Agreement may not be assigned or otherwise transferred except upon the prior written consent of both parties. However, subject to BASF's consent, BODY SHOP shall cause the party or parties which, individually or in the aggregate, acquire all or substantially all of the assets of any location of a Controlled Business where the Business is conducted, to assume the rights and obligations under this Agreement.

10. <u>Notices</u>: All notices from either party to the other relating to this Agreement are to be sent by First Class United States mail, postage prepaid (effective three (3) days after postmark), overnight mail or delivered personally to the respective addresses set forth above.

11. <u>Warranty</u>: The parties hereto represent and warrant to each other that the execution of this Contract is not in breach of any other legal obligation that said party may have to any third party and that each party hereto agrees to defend and indemnify the other for breach of this representation and warranty.

12. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement between BASF and the BODY SHOP, terminating and superseding any prior agreements relating to the subject matter hereof and may be amended only by a writing signed by both parties, notwithstanding any course of dealing or the exchange of correspondence or documents not mutually executed.

13. <u>Expiration</u>: The offer reflected in this agreement is valid from sixty days of BASF's signature date; if the agreement is not executed by BODY SHOP on or before that date the offer will be deemed automatically withdrawn.

    IN WITNESS WHEREOF, the parties have entered into this Agreement effective as of the day and year first above written.

**BASF Corporation**

By: _Adam Lazewski_ (DocuSigned)
Title: N.A. Zone Manager
Date: 24/10/2018 | 18:14 CEST

**Platinum Automotive Center**

By: _[signature]_
Title: CEO
Date: 10/29/18

# EXHIBIT B



**Cristina Thrasher**
Senior Litigation Counsel
Writer's Direct Line: (973) 245 7984
E-mail Address: cristina.thrasher@basf.com

April 4, 2023

<u>**Via Federal Express and E-Mail**</u>
<u>**Tracking No.: 7717 4840 6005**</u>

Platinum Automotive Center
Ricky Bhatti
7229 Cross Country Road
North Charleston, SC 29418
platinumbodyandtow@gmail.com

**Re:  Requirements Agreement dated October 24, 2018 between BASF Corporation ("BASF") and Platinum Automotive Center ("Platinum Auto")**

Dear Mr. Bhatti:

This letter serves as a demand for repayment of amounts owed to BASF Corporation ("BASF") of $116,430 as a result of Platinum Automotive Center's ("Platinum Auto") unilateral termination of the Requirements Agreement dated October 24, 2018, and Platinum Auto's failure to honor its contractual obligations to BASF pursuant to the terms of the above-referenced Agreement. Specifically, since the breach of the Requirements Agreement, Platinum Auto is in default of its obligation to: 1) purchase BASF Refinish Products as 100% of its requirements for Refinish Products, specifying only BASF brand products for Refinish Products; 2) purchase a minimum of $534,000 in the aggregate of BASF Glasurit and RM products, net of all distributor discounts, rebates, returns and credits; 3) repay the Contract Fulfillment Consideration of $85,000 in accordance with the schedule set forth in the above-referenced Agreement; and 4) return the BASF equipment loaned to Platinum Auto or the value of the equipment.

In the event that Platinum Auto fails to repay the amount owed, within ten (10) days of the date of receipt of this letter, BASF will refer this matter to litigation and will seek all damages to which BASF is entitled, for payment of the $116,430 and lost profits, resulting from Platinum Auto's breach of the Requirements Agreement.

**BASF Corporation**
100 Park Avenue
Florham Park, N.J. 07932
(800) 526-1072
www.basf.us



If you are represented by an attorney, please have him/her contact me. If you are not represented by an attorney and are interested in resolving this matter amicably, please:

1. Contact me directly at telephone No. 973-245-7984; or

2. Remit payment in full by certified bank check to BASF Corporation, mailed to the attention of:

   **Mr. Randy Tucker**
   **Distribution Programs Coordinator**
   **BASF Corporation**
   **26701 Telegraph Road**
   **Southfield, MI 48033**

Very truly yours,

Cristina Thrasher
Senior Litigation Counsel

cc:   Matthew Lacey
      Thaddeous Green
      Mark Hamrick
      Randy Tucker

**BASF Corporation**
100 Park Avenue
Florham Park, N.J. 07932
(800) 526-1072
www.basf.us